**Christopher Ray JOHNSON, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 01–11–00406–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

May 3, 2012.

Discretionary Review Refused Oct. 10, 2012.

Thomas J. Lewis, Attorney at Law, Houston, TX, for Appellant.

Alan Curry, Chief Prosecutor, Appellate Division, Harris County District Attorney's Office, Melissa Parker Hervey, Assistant District Attorney, Harris County, Texas, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices HIGLEY and BROWN.

## OPINION

SHERRY RADACK, Chief Justice.

Appellant Christopher Ray Johnson was convicted following a jury trial of forgery of a commercial instrument, i.e., a money order, and sentenced to seven years' confinement. He appeals here (1) challenging the sufficiency of the evidence that he acted with "intent to defraud," and (2) complaining that the prosecutor's closing argument improperly introduced facts outside the record. We reverse.

## BACKGROUND

On March 3, 2010, Miriam Karr bought a Western Union money order for $535 to pay her family's rent at The Pointe apartment complex. She filled in "The Pointe" as the payee and her own name and address on the "purchaser" line. Around 8:00 that same evening, she deposited the money order into the night drop box of the apartment complex's office, which was already closed for the day.

The Pointe did not receive Karr's money order. She requested a refund from Western Union, but required a police report and an affidavit from her attesting that she was not at fault. She then discovered that to obtain a police report, she needed a copy of the money order from Western Union and other information from Western Union about the location of the money order. It took several months for Karr to straighten it out and, because of the delay in receiving a Western Union refund and her inability to come up with funds to pay the lost rent, her family was evicted for rent nonpayment and lost their belongings.

The copy of the money order Western Union provided reflected that both the purchaser and payee lines had been altered to remove Karr's and The Pointe's names. Her name on the purchaser line had been replaced with "Shoust," and her apartment complex's name as the payee had been replaced with appellant's name. The amount of the money order, i.e., $535, had not been changed. Karr testified that she did not know appellant and had not authorized him or anyone else to alter her money order.

Sergeant Patrick Walker with the Houston Police Department Forgery Division testified that he investigated the theft of the money order and opined that it was likely "fished" out of the apartment complex's night deposit, and then chemically "washed." He explained that "night drop fishing" is a common method of stealing rent payments by using double-sided tape or some other adhesive attached to a wire hanger or other pliable, extended tool to pull money orders and checks back through the slot of a night drop box. "Washing" refers to the use of chemicals to soften the ink on a money order or check so that a soft adhesive can been used to lift the ink off the paper, leaving the original writing largely undetectable.

Walker's inspection of the forged money order revealed that appellant had cashed it at an HEB Store the afternoon of March 5, 2010, about thirty-six hours after Karr deposited it in the night drop box. Walker interviewed the cashier who processed the transaction. That cashier was not able to identify appellant from a photo array, but did confirm that appellant presented a valid Texas driver's license, provided his thumbprint, and otherwise complied with HEB's verification procedures to obtain payment from the instrument. Deputy Katherine Mills with the Houston Police Department Crime Scene Unit testified that she also compared the fingerprint that appellant submitted at HEB when he cashed the money order with appellant's known fingerprints, and verified that they matched.

Walker testified that he made no attempt to locate or indentify anyone named Shoust—the name listed as purchaser on the money order—to ascertain if that person existed and, if so, if that person had any ties to the Point, to Karr, or to appellant. Walker further testified that he did not try to contact or interview appellant to ask him how he came into possession of the money order. He testified that the results of his investigation demonstrated only that appellant was the person who negotiated the money order, but not that he was the person who stole or altered the money order.

Walker opined that the short period of time between the theft and negotiation of the money order was significant in that "it narrows the focus" of the investigation into who may have intent or knowledge that a commercial document is forged. He also opined that it was suspicious that the money order amount of $535 was not altered, because it would be a coincidence for the money order to have been negotiated to appellant for a debt of that amount.

At the close of the State's case, appellant moved for a directed verdict, which the court denied. The defense rested without putting on evidence.

The jury found appellant guilty of forgery and, after appellant stipulated to the truth of two prior enhancements—both state jail felony offenses of burglary of a building—the jury assessed his punishment at seven years' confinement. Appellant timely appealed.

### ISSUES ON APPEAL

In two points of error, appellant contends (1) there is legally insufficient evidence to prove the "intent to defraud" element of forgery, and (2) the prosecutor made an improper jury argument that suggested to the jury that appellant knew that the money order was stolen despite there being no supporting evidence in the record to that effect.

### SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends that there is insufficient evidence of his intent to defraud. He acknowledges that intent to defraud can be inferred if the State proves the defendant has knowledge the instrument has been forged. *See Williams v. State,* 688 S.W.2d 486, 488 (Tex.Crim.App.1985). But, he asserts, the Court of Criminal Appeals has admonished that "intent or guilty knowledge cannot be inferred from the mere passing of a forged

instrument." *See Parks v. State,* 746 S.W.2d 738, 740 (Tex.Crim.App.1987). While courts have recognized that circumstantial evidence can be adequate to demonstrate intent to defraud, he argues that such circumstantial evidence is absent here.

In response, the State concedes that appellant's passing or presenting the forged money order is not evidence of his specific intent to defraud. It asserts, however, that there is sufficient circumstantial evidence of such specific intent to support the jury's verdict. Specifically, it argues that intent is shown by evidence (1) that there was no explanation for appellant's possession and presentment of the money order, (2) that the amount on the money order was not changed, and (3) of the short timeframe between theft of the money order and appellant's presentment.

### A. Standard of Review

■ We review a challenge to the legal sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia,* 443 U.S. 307, 318–20, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). *See Ervin v. State,* 331 S.W.3d 49, 52–56 (Tex.App.-Houston [1st Dist.] 2010, pet. ref'd) (citing *Brooks v. State,* 323 S.W.3d 893, 894–913 (Tex.Crim.App.2010)). Under the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson,* 443 U.S. at 317–19, 99 S.Ct. at 2788–89; *Laster v. State,* 275 S.W.3d 512, 517 (Tex.Crim.App. 2009). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence

probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *See Jackson*, 443 U.S. at 314, 318 n. 11, 320, 99 S.Ct. at 2786, 2789 & n. 11; *Laster*, 275 S.W.3d at 518; *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App. 2007).

The *Jackson* standard gives full play to the responsibility of the factfinder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 318–19, 99 S.Ct. at 2788–89; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App.2007). An appellate court presumes the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793. If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211,2218, 72 L.Ed.2d 652(1982).

**B. Applicable Law**

It is an offense if a person "forges a writing with intent to defraud or harm another." TEX. PENAL CODE ANN. § 32.21 (Vernon 2011); *Ex parte Porter*, 827 S.W.2d 324, 325 (Tex.Crim.App.1992). ▮▮▮▮ Possession, passage, or presentment of a forged instrument is not evidence of intent to defraud. *Parks*, 746 S.W.2d at 740. Intent to defraud or harm may be established by other circumstantial evidence. *Williams*, 688 S.W.2d at 488. For example, if the State proves that an actor has knowledge that a particular check is forged, proof of intent to defraud is inferred. *Id.* Further, if there is sufficient evidence to establish an actor's theft of the instrument ultimately forged, the

evidence is deemed sufficient to show knowledge of the forgery, and therefore sufficient to show an intent to defraud or harm. *Palmer v. State*, 735 S.W.2d 696, 699 (Tex.App.-Fort Worth 1987, no pet.).

**C. Analysis**

Appellant identifies the following as circumstances that courts have found probative of intent to defraud and emphasizes the lack of all but one of these circumstances here:

(1) The defendant gives a false explanation of how he possessed the check;

(2) The name of the maker of the check is proven to be false;

(3) The defendant flees;

(4) The defendant gives false identification to the cashier;

(5) The defendant's signature and the forged signature on the check appear similar.

*Griffin v. State*, 908 S.W.2d 624, 627 (Tex. App.-Beaumont 1995, no pet.) He analogizes the facts here to two other cases-*Stuebgen v. State*, 547 S.W.2d 29 (Tex. Crim.App.1977) and *Crittenden v. State*, 671 S.W.2d 527 (Tex.Crim.App.1984)—in which the Court of Criminal Appeals held evidence to be insufficient to demonstrate an intent to defraud.

In *Stuebgen*, the defendant cashed a check on December 5, 1974 that was payable to him with a maker of "Bill Chitwood." 547 S.W.2d at 31. Chitwood testified that "the check passed was his personalized check, but that the signature on the check was not his." *Id.* He also testified that the defendant was his employee in November and December of 1974, that Chitwood kept his checkbook in his truck, and that three to five employees rode in his truck daily during that period, including the defendant. *Id.* In holding that this evidence was insuffi-

cient to support a finding that the defendant had sufficient intent to defraud, the court explained:

> In the instant case, the record reflects that appellant made no statement from which it could be inferred that he knew the instrument was forged. Appellant was listed as the payee, and appellant did not falsely represent himself. No evidence was introduced to show that anything appearing on the check was in appellant's handwriting. Although appellant had access to Chitwood's checkbook, and Chitwood normally paid his employees personally, we do not find that this evidence is sufficient to discharge the State's burden of showing that appellant acted with intent 'to defraud or harm another.'

*Id.* at 32.

In *Crittenden,* the other case appellant cites as "similar to the present case," the defendant presented "a check drawn on the account of a Lubbock service station and made payable to himself." 671 S.W.2d at 527. The purported maker of the check was a local attorney, John J.C. O'Shea. *Id.* The defendant testified that he received the check in the mail, and believed it to be settlement proceeds from a case O'Shea was working on for him. *Id.* at 527–28. O'Shea testified that he was handling a case for the defendant, but that he did not sign the service station check, nor mail it to the defendant. *Id.* at 528. In reversing the defendant's forgery conviction, the court explained:

> We find the facts of the instant case remarkably similar to the facts in *Stuebgen v. State* and *Pfleging v. State* [572 S.W.2d 517 (Tex.Crim.App.1987)]. Just as in those cases, the State, in the instant case, proved that the instrument was in fact forged; but the State failed to present any evidence, circumstantial or otherwise, to show the appellant's

knowledge that the instrument was forged or to show that appellant possessed the intent to defraud or harm. The appellant made no statement from which it could be inferred that he knew the instrument was forged. Appellant was listed as the payee and he did not falsely represent himself. No evidence was introduced to show that anything appearing on the check was in appellant's handwriting. There was no showing of any connection between the check stolen from the service station and appellant prior to the time he said he received it in the mail. Finally, appellant made no attempt to flee after his attempt to deposit the check was thwarted.

*Id.* (citations omitted).

The State insists that there is more circumstantial evidence in this case of intent to defraud than was present in *Stuebgen* and *Crittenden.* It argues that we should thus instead look to other cases holding that there was sufficient circumstantial evidence of intent to defraud to sustain a forgery conviction that it claims present facts more analogous to those here. *See Huntley v. State,* 4 S.W.3d 813 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd), *Tucker v. State,* No. 05–06–00746–CR, 2006 WL 3704638 (Tex.App.-Dallas, Dec. 18, 2006, no pet.) (not designated for publication), *Palmer,* 735 S.W.2d at 696, *Jasper v. State,* No. B14–92–00188–CR, 1993 WL 81733 (Tex.App.-Houston [14th Dist.] Mar. 25, 1993, no pet.) (not designated for publication).

We thus examine these cases to determine if they support the State's argument that intent to defraud can be inferred from (1) the lack of explanation for appellant's possession and presentment of the money order, (2) the amount on the money order not being changed, and (3) the short time-frame between theft of the money order

and appellant's presentment. We conclude they do not.

In three of the four cases cited by the State, the payor indentified on the face of the instrument negotiated by the defendant denied having given the defendant the instrument and testified that he or she did not know the defendant.[1] The *Palmer* court explained the significance of this fact in the face of no explanation by the defendant as to how he had acquired the check at issue:

> Palmer presumably would have known that he had no connection with [the pay or/maker of the check] Gateway. We find that Palmer's lack of any relationship with the payor, even though he was the payee on the check, taken in connection with his unexplained, personal, recent possession and passing as his of one of the payor's stolen checks, is sufficient evidence to establish his knowledge that the check was forged, and therefore his intent to defraud or harm another.

735 S.W.2d at 698; *see also Huntley,* 4 S.W.3d at 815 (defendant's failure to bring forth witness who had written check to him in light of check payor's testimony that she did not know defendant or write check to him made other "suspicious circumstances" even "more suspicious and rendered appellant's recent, personal possession of a stolen check unexplained").

The *Tucker* court likewise found similar unexplained possession by the defendant to be significant in the face of testimony by the payor that she did not know the defendant and did not issue to him a check:

> Given [payor] Boule's testimony, there is no plausible legitimate explanation for appellant's possession and presentment of the check. He had no relationship with Boule or her company even though he was the payee on the check. And unexplained, personal, recent possession and passing of a forged check is sufficient evidence to establish appellant's knowledge that the check was forged ad to show he had the intent to defraud or harm another.

2006 WL 3704638, at *2 (citing *Huntley,* 4 S.W.3d at 815; *Palmer,* 735 S.W.2d at 698).

The State argues that, based on the reasoning of these cases, the fact that Karr and appellant did not know each other, coupled with appellant's failure to explain how he came to be in possession of Karr's stolen money order, is evidence from which an intent to defraud can be inferred. The State's argument ignores the significant fact, however, that the payor indentified on the money order presented by appellant was not Karr—it was someone named Shoust. The State has the burden of proof, and performed no investigation to determine if such a person existed and, if so, what relationship he or she had to appellant. There was thus no testimony by the payor in this case disclaiming a relationship with appellant as in the cases cited by the State, nor was there evidence indicating that the payor may not exist.[2] Indeed, the State purposefully

---

1. In the fourth case, *Jasper v. State,* it is not apparent from the opinion whether there was a payor indentified on the stolen money orders presented for payment by the defendant. 1993 WL 81733, at *2.

2. Testimony that the payor on a financial instrument does not appear to be a real person based on a search for someone by that name in the relevant geographical area has been cited as relevant to a defendant's intent. *See Williams,* 688 S.W.2d at 489 (describing investigation in search of payor which revealed that she could not be located by search of her name, and that her address listed on money order was for an unrelated tire store); *Colburn v. State,* 501 S.W.2d 680, 682 (Tex.Crim. App.1973) (holding fact that extensive search for payor on forged check revealed that person likely did not exist supported inference

avoided interviewing appellant to inquire about how he came to be in possession of the money order. Under these circumstances, accepting the State's argument would render a defendant's presentment of a forged instrument, coupled with that defendant's failure to testify on his or her on behalf, sufficient evidence of intent to defraud. This is contrary to the well-settled principle that "[t]he failure of any defendant to so testify shall not be taken as a circumstance against him." *See* TEX.CODE. CRIM. PROC. ANN. art. 3808 (Vernon 2011).

The next factor cited by the State is the fact that the amount of the money order was not changed when the payor and payee were altered. While the State asserts that this demonstrates that "appellant at least had knowledge that the order was illegitimate," it cites no case supporting that proposition, and we have located none. *Cf. Griffin*, 908 S.W.2d at 628 (testimony that "even" dollar amount of $250 was unusual because memorandum line on check stated "for work" and generally payroll checks are not for even amounts was not evidence from which it could be inferred that defendant knew that check was forged).

Finally, the State cites that only thirty-six hours passed between the theft of the money order and when appellant passed it at HEB. A short time frame between theft of a financial instrument and passage of the forged document has contributed to the totality of the circumstances in cases inferring an intent to defraud. *See Jasper*, 1993 WL 81733, at *2 (six to eight weeks between burglary and when defendant cashed money orders "decreas[ed] the possibility that the money orders had changed hands since the theft"); *Palmer*, 735

S.W.2d at 697–98 (citing fact that check had been stolen two days before defendant presented check as significant).

In each case in which a short time frame between theft and presentment was cited as circumstantial evidence of intent to defraud, it was one of several factors adding to a totality of suspicious factors that are not present here. In *Huntley*, the case upon which the State primarily relies, the following factors were cited:

(1) appellant is a black male who was in possession of the forged check which had been stolen less than 24 hours earlier by a black male;

(2) no other stolen checks showed up after appellant's arrest, suggesting possible association between appellant and the robber;

(3) appellant presented the forged check for cash to the issuing bank early Monday morning, when the bank first opened after the robbery, maximizing the chances that the check might be cashed if the complainant had not yet reported her checks stolen;

(4) the amount of the check was $465, making it unlikely that appellant would have been given such a large check by a stranger, and yet appellant did not subpoena this person as a witness, to explain appellant's possession of the check;

(5) the check made out to appellant was dated two days before it was stolen from the complainant, and thus two days before the check could have been presented to appellant, which should have at least alerted appellant to irregularity in its issuance as a predated check; and

that defendant knew check was forged); *Golden v. State*, 475 S.W.2d 273, 274 (Tex. Crim.App.1972) (evidence that defendant stated the maker of a forged check was an insur- ance man but an extensive investigation demonstrated no such person existed supported inference that defendant knew check was forged).

(6) the complainant did not know appellant, making it suspicious that appellant would be given such a large check by a stranger.

*Huntley*, 4 S.W.3d at 814–15. These factors, coupled with Huntley's failure to explain how he came to be in possession of the check, were sufficient to support the inference that he knew the check he presented was forged. *Id.* at 815.

In *Jasper*, the court noted that (1) the defendant acted suspicious when he cashed the money orders, presenting one and then returning ten minutes later to present the second, (2) the defendant testified that he "could not remember whether he cashed the money orders," despite clear evidence that he had, and (3) given the defendant and complainant both testified, credibility was at issue. 1993 WL 81733, at *12.

■ In this case, evidence was presented that appellant cashed an altered money order, which is not evidence of intent to defraud. *Parks*, 746 S.W.2d at 740–41. We are mindful that intent to defraud can be proven entirely by circumstantial rather than direct evidence. *Griffin*, 908 S.W.2d at 627 (citing *Williams*, 688 S.W.2d at 488). The totality of the circumstances here, however, falls short of those that have supported such an inference in other cases. The alterations to the money order in this case were undetectable upon examination. There is no testimony tying appellant to the theft of the money order, or to its alteration. There was no evidence about appellant acting suspiciously when he presented the money order, or about his misrepresenting his identity. There was no evidence that his handwriting matched that of the payor or payee on the money order.

The State purposefully avoided interviewing appellant and did no investigation into the existence, identity, or whereabouts of the money order's payor. There was no evidence that the payor on the money order did not exist, or testimony from the payor disclaiming a relationship with appellant. The State's entire case rests on the facts that (1) appellant did not testify to provide an explanation about his possession of the money order (a fact we have explained cannot be circumstantial evidence of intent to defraud on these facts), (2) the amount of the money order was not altered, and (3) less than two days passed between theft of the money order and appellant's presenting it at HEB.

Given the complete absence of evidence about the payor on the forged money order, the circumstantial evidence—i.e., the unaltered payment amount and the short thirty-six hour timeframe between theft and presentment—are not sufficient in their totality for a rational factfinder considering the evidence in the light most favorable to the verdict to find intent to defraud was proven by the State beyond a reasonable doubt. *See Jackson*, 443 U.S. at 317–19, 99 S.Ct. 2781; *Laster v. State*, 275 S.W.3d at 517.

We sustain appellant's first point of error.

## CONCLUSION

Given our resolution of appellant's first point of error, we need not reach his second point. We reverse appellant's conviction and render a judgment of acquittal.