

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00309-CR

DAVID KITZMILLER                                                        APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. F-2013-0272-B

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In three issues, Appellant David Kitzmiller appeals his conviction for forgery, asserting (1) the evidence is insufficient to sustain his conviction, (2) the trial court abused its discretion when it denied his motion for directed verdict, and

----------

[1]*See* Tex. R. App. P. 47.4.

(3) the trial court abused its discretion when it denied his motion to suppress. We affirm.

## II. Background

In December 2012, Denton Police Detectives Terry Brooks and Chris Murphy were engaged in a hotel interdiction[2] at the Royal Hotel Suites in Denton, when, according to Detective Brooks, they received information that Room 249 was experiencing a high volume of foot traffic. The room was registered to Ashley Howard. As a result of a check for outstanding warrants, Detective Brooks received confirmation of an outstanding warrant for Howard from Bell County.

The detectives proceeded to Room 249 and knocked on the door. A female answered and identified herself as Ashley Howard, whereupon Detective Brooks informed her that there was a warrant out for her arrest and asked if they could come inside the room. Howard acquiesced. Detective Brooks testified that as soon as he entered the room, he smelled a burnt odor of marijuana, so he inquired if there was anyone else in the room. Howard replied in the affirmative and pointed toward the bedroom, which was located further down a hallway. As

---

[2]Detective Brooks testified that hotel interdictions involve routine stops at local hotels that are "hotspots for narcotics and prostitution." The officers speak to hotel employees, including managers and maintenance workers, and investigate reports of suspicious activity and complaints in an effort to minimize illegal activity.

part of a "protective sweep," Detective Brooks entered the bedroom.[3]  As Detective Brooks entered the bedroom, he observed Kitzmiller standing a few feet away.  While speaking with Kitzmiller, Detective Brooks continued to scan the room for any other potential threats.  Approximately three or four feet from where Kitzmiller stood, Detective Brooks noticed a Hewlett-Packard printer on the nightstand.  The printer contained a piece of paper in its paper tray with what appeared to be counterfeit U.S. currency printed on it.[4]

Detective Brooks described the paper as "odd" with "several bills . . . on one sheet of paper . . . several U.S. currency bills."  Specifically, on one side of the paper, a ten-dollar bill and three twenty-dollar bills were depicted.  The backside of the paper was blank.  Sitting next to the printer was a package of linen paper similar to the paper onto which the images of money had been photocopied.

Detective Brooks then performed a consensual search of Kitzmiller and discovered a ten-dollar bill and three twenty-dollar bills taped together in his right front pocket.  The serial numbers of the bills in Kitzmiller's pocket were identical

_____

[3]Detective Murphy explained that a protective sweep is routinely performed when officers enter a residence to execute a warrant.  Its purpose is to ensure that there is no additional threat somewhere else in the dwelling.  He explained, "You don't want to put your hands on somebody in a residence and try to go arrest them if there's a threat that could possibly come from somewhere else . . . .  That's why we do a protective sweep to make sure there's nobody else around to do harm to other officers."

[4]Detective Brooks testified that the paper was in the tray where printed paper emerges from the machine.

to those in the printer tray. When Detective Brooks inquired about the photocopied currency, Kitzmiller expressed shock and disbelief that someone had apparently paid him with counterfeit money.[5] Fingerprints that were found on the photocopied money matched Kitzmiller's.

The jury found Kitzmiller guilty of the offense of forgery, assessed his punishment at two years' confinement, and recommended community supervision. Based on the jury's recommendation, the judge placed Kitzmiller on community supervision for two years.

### III. Sufficiency and Motion for Instructed Verdict

**A. Standard of Review**

A challenge to the denial of a motion for instructed verdict is actually a challenge to the sufficiency of the evidence. *Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1051 (2003). Therefore, we will review Kitzmiller's first and second issues together.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

---

[5]Detective Brooks testified, "He had a shocked look. He said, 'I can't believe – or, who paid me with counterfeit money?,' is what his reply was." Detective Brooks further testified that he did not find Kitzmiller's display of shock to be genuine.

4

307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict

the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Byrd*, 336 S.W.3d at 246.

The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013); *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

## B. Applicable law

In this case, Kitzmiller committed the offense if the evidence shows, beyond a reasonable doubt, that he "forge[d] a writing with intent to defraud or harm another." *See* Tex. Penal Code Ann. § 32.21(b) (West 2011). Here, "forge" means to possess a writing that is altered or made so that it purports to be the act of another who did not authorize that act, *id.* § 32.21(a)(1)(A)(i), with the intent to utter or pass such writing, *id.* § 32.21(a)(1)(B), (C). A "writing" includes money. *Id.* § 32.21(a)(2)(B).

## C. Analysis

In his first issue, Kitzmiller asserts that the State failed to prove every element of the indictment. Specifically, he argues that the State failed to prove that (1) the United States Government did not authorize him to make the

6

currency, (2) Kitzmiller forged the currency, or (3) Kitzmiller possessed the photocopied currency with the intent to defraud or harm another.

## 1. Authorization

Kitzmiller first argues that "expert testimony" was required to prove that the Secretary of the United States Department of the Treasury did not give him the authority to photocopy U.S. currency. Specifically, he asserts that the State needed to have either a Secret Service agent or someone from the U.S. Department of Treasury testify that Kitzmiller was not authorized to make the currency.

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In this case, the facts are as follows: (1) The officers found Kitzmiller in a hotel that was known for crime; (2) Kitzmiller was standing a few feet from a home printer containing a piece of paper with U.S. currency photocopied onto it on one side; (3) Kitzmiller's fingerprints were on the photocopied page; (4) a box of linen paper matching the paper in the printer tray was located beside the printer; (5) Kitzmiller possessed valid currency taped together in his pocket; (6) the serial numbers of the taped currency matched the serial numbers of the photocopied currency; and (7) the surroundings did not appear to be those of a legitimate printing operation.

7

A juror is not required to check his or her common sense at the door. *See Wright v. State*, 571 S.W.2d 24, 25 (Tex. Crim. App. [Panel Op.] 1978) (holding that jury charges need not define phrases that are commonly understood that present a fact issue); *Anderson v. State*, 414 S.W.3d 251, 256 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (stating that jurors must use their common sense in determining whether proof beyond a reasonable doubt has been met); *Perkins v. State*, 394 S.W.3d 203, 209 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (stating that jurors were permitted to rely on their common sense to conclude that images of a teenage girl—who had undressed in the belief that she had privacy in the bathroom—"were created and preserved to appeal to deviant and voyeuristic interests of the viewer, and thus the images are intended or designed to elicit a sexual response"). To the contrary, jurors are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence. *Boston v. State*, 373 S.W.3d 832, 837 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013); *Obigbo v. State*, 6 S.W.3d 299, 306 (Tex. App.—Dallas 1999, no pet.) ("Appellant's insurance claim defies common sense and ordinary life experience."). In using their common sense, jurors are not required to ignore commonly-understood concepts, such as the presence and purpose of serial numbers on currency—or other everyday items such as appliances and electronics—to uniquely identify a particular item. *See, e.g., Bollinger v. State*, 224 S.W.3d 768, 777 (Tex. App.—

8

Eastland 2007, pet. ref'd) ("The serial numbers on the guns in Bollinger's truck were the same as the serial numbers on the guns Davis reported stolen."). Therefore, a reasonable juror could have inferred that because Kitzmiller was in a hotel room photocopying U.S. currency—each note of which bore a unique serial number—onto linen paper on a home-printer, that he did not have authorization from the U.S. Government to engage in that activity. *See* 12 U.S.C.A. § 413 (West 2014) (directing that "[f]ederal [r]eserve notes shall bear upon their faces a distinctive letter and serial number"); 31 U.S.C.A. § 5114 (West 2003 & Supp. 2014) (authorizing the U.S. Secretary of the Treasury to engrave and print United States currency on "distinctive paper").

## 2. Forgery

Kitzmiller argues next that the State failed to prove the element of actual forgery as defined by the statute. Specifically, he asserts that evidence consisting only of one-sided photocopied currency is insufficient to prove forgery, a necessary element to support his conviction.

"[T]he fact that an instrument does not appear to create a legal obligation, or otherwise apparent validity, no longer precludes prosecution for forgery." *Graham v. State*, 693 S.W.2d 29, 30 (Tex. App.—Houston [14th Dist.] 1985, no pet.); *see also Lloyd v. State*, 574 S.W.2d 159, 160 (Tex. Crim. App. 1978) (holding that there was no requirement to prove that a check was a valid obligation because the offense of forgery "does 'not require that the instrument in writing be such as to create, increase, diminish, discharge or defeat pecuniary

9

obligation'") (citation omitted). Like here, the issue in *Graham* was whether the one-sided bills were writings, as defined by the statute, which purported to be an act of the United States Government. The appellate court affirmed the conviction and, in doing so, held that they were. 693 S.W.2d at 30. Therefore, the one-sided photocopied bills were sufficient to support Kitzmiller's conviction. *See id.*

### 3. Possession with Intent to Defraud

Kitzmiller further argues that the State failed to prove the intent-to-defraud element. He argues that since the only evidence presented to the jury was that Kitzmiller was found with the one-sided photocopied money, which was located in a nearby printer tray, the State proved mere possession, which he contends is insufficient to prove intent to defraud.

"In the case of forgery, the culpable mental state"—i.e., intent to defraud or harm—"requires proof of knowledge that the instrument is forged." *Williams v. State*, 688 S.W.2d 486, 488 (Tex. Crim. App. 1985) (en banc). This knowledge, and the intent that is inferred from it, may be established by circumstantial evidence. *See id.*

Here, when the detectives asked Kitzmiller about the photocopied currency, he acted shocked and made a nonsensical comment about someone paying him with counterfeit money. *See Johnson v. State*, 425 S.W.3d 516, 520 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (listing as one of the circumstances that courts have found probative of intent to defraud is when the defendant gives a false explanation of how he possessed the financial

10

instrument); *cf. Stuebgen v. State*, 547 S.W.2d 29, 32 (Tex. Crim. App. 1977) (holding evidence of forgery insufficient when record reflected that appellant made no statement from which it could be inferred that he knew the instrument was forged). The officers found the valid currency from which the photocopied currency had been duplicated in Kitzmiller's pocket, and his fingerprints appeared on the photocopied money. We hold that this constitutes sufficient evidence to prove that Kitzmiller had photocopied valid U.S. currency. A reasonable juror could infer from these facts that Kitzmiller was both aware that the money on the printer was forged and also that Kitzmiller intended to defraud with the forged currency. *See Huntley v. State*, 4 S.W.3d 813, 814 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (op. on reh'g) ("The intent to defraud or harm another in a forgery case can be inferred if the State proves an actor has knowledge that the check is forged."); *see also Lopez v. State*, No. 13-08-00732-CR, 2010 WL 1115671, at *6 (Tex. App.—Corpus Christi Mar. 25, 2010, no pet.) (mem. op., not designated for publication) (pointing out that proof of intent to defraud is derivative of the other elements in a forgery case; it can be inferred if the State proves that the defendant knew that the writing in question was forged); *cf. Johnson*, 425 S.W.3d at 521–22 (concluding that intent-to-defraud element could not be inferred from appellant's lack of explanation for his possession and presentment of money order).[6] Because we hold that a rational jury could have

_____

[6]A jury convicted Johnson of forgery of a money order. *Johnson*, 425 S.W.3d at 517. The evidence showed that the complainant had purchased a

11

found beyond a reasonable doubt all the elements of forgery, we overrule Kitzmiller's first and second issues.

## IV. Motion to Suppress

In his third issue, Kitzmiller asserts that the police lacked specific, articulable facts to believe that he posed a threat or danger to them or anyone else.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical

---

money order from Western Union to pay rent; her apartment complex was listed as the payee and the complainant's name and address were listed on the "purchaser" line. *Id.* at 518. The complex never received the money order, and the copy of the money order provided by Western Union reflected that both the purchaser and payee lines had been altered; the complainant's name had been replaced with "Shoust," and the payee's name had been replaced with Johnson's name. *Id.* The complainant testified that she did not know Johnson and had not authorized him or anyone else to alter the money order. *Id.* The investigating police officer testified that he did not try to locate or identify Shoust or to contact or interview Johnson to ask him how he came into possession of the money order; he further testified that the results of his investigation showed only that Johnson was the person who negotiated the money order but not that he was the person who stole or altered it. *Id.* There was no testimony by Shoust to disclaim a relationship with Johnson or any evidence indicating that Shoust might not exist, and no evidence tying Johnson to the theft of the money order or its alteration. *Id.* at 522, 524. In light of the complete absence of evidence about the payor on the forged money order, the court concluded that the evidence was insufficient to find intent to defraud and reversed the trial court's judgment of conviction. *Id.* at 524.

12

fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

## B. Analysis

The court of criminal appeals has stated that

> [w]hen conducting an in-home arrest, a police officer may sweep the house only if he possesses an objectively reasonable belief, based on specific and articulable facts, that a person in that area poses a danger to that police officer or to other people in the area. As the Supreme Court also concluded, this sweep must stay within the appropriate scope and may last long enough to "dispel the reasonable suspicion of danger."

*Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000).

The detectives testified to the following facts: (1) the hotel was a known haven of illegal activity; (2) the detectives had received a report of high foot traffic coming out of that specific room; (3) Howard, to whom the room was registered, had an outstanding warrant for her arrest; (4) Howard gave the detectives consent to enter the room; (5) one of the detectives smelled burnt marijuana; (6) based on Howard's warrant and the reported foot traffic, the detectives were concerned that Howard was involved in illegal activity; (7) Howard informed the detectives that another individual was in the bedroom; (8) the detectives did not search through drawers, cabinets, or underneath anything; and (9) the

13

photocopied money, printer, and linen paper were all in plain view when the officers entered the room.

Given the circumstances in this case, we hold that the detectives possessed an objectively reasonable belief that the person Howard referred to as in the bedroom could have posed a danger to the detectives and that they therefore were justified in performing a protective sweep. For that reason, the trial court did not err by denying Kitzmiller's motion to suppress, and we overrule Kitzmiller's third issue.

## V. Conclusion

Having overruled all of Kitzmiller's issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL: MEIER, GABRIEL, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 23, 2015