**Opinion issued December 15, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-15-01054-CR**

———————————

**DAVID LEROY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Case No. 1471531

# O P I N I O N

A jury convicted appellant David Leroy of forgery, and the court assessed punishment at five years in prison. *See* TEX. PENAL CODE § 32.21. In a single issue, Leroy challenges the legal sufficiency of the evidence presented to support his conviction.

The evidence at trial supported an inference that Leroy knew he presented a forged check. This was legally sufficient to support a finding that he intended to defraud or harm another, the only element of forgery challenged on appeal. Accordingly, we affirm.

**Background**

David Leroy entered the First Community Credit Union in Harris County, Texas and approached a teller's window. Without prompt from the teller, he presented her with a First Community Credit Union check, a debit card issued by BBVA Compass bank, and his State of Texas identification card. The check was made out to David Leroy on the credit union account of Judy Smith in the amount of $825. The face of the check indicated that the payment was for "roofing contractor work." When the teller inspected the check, she noticed that the signature on the check "was very shaky," "all of the security features" normally located on check were missing or altered, the check "was washed," and the check "had a bleach Cloroxy smell."

The teller left Leroy at the window and took the check and other items to the back of the office, away from the teller windows. While in the back, she called Smith to verify whether she had written a check to Leroy. She had not. The teller also called the credit union's fraud investigator. The fraud investigator contacted Smith and again verified that she had not written a check to Leroy. She instructed

the teller manager to call the police, which she did. The investigator then inspected the check herself and found that it appeared to be washed and some of the "identifiers" were no longer on the check.

Leroy waited for 45 minutes to an hour while the teller retained the check and his other items in the back of the credit union. Over the course of this period of time, he became "irate." He walked back and forth between the teller windows "yelling" at the tellers, telling them that he wanted his identification back, wanted his cards back, and that he wanted his money.

Eventually, Leroy left the credit union without any of the items that he originally handed to the teller. He ran across the street, and he was arrested.

At trial, the State introduced the check along with a copy of Leroy's debit and identification cards. The teller and fraud investigator identified Leroy as the man who presented the check, and they identified the check presented on that day. The teller testified that people who were not members of their credit union generally did not present all of the documents that Leroy presented without being prompted to do so. Additionally, the investigator testified that in her 30 years of experience, a person who is presenting a legitimate check does not leave his check, identification, and bank card before completing the transaction.

Defense counsel elicited testimony on cross-examination of the teller and investigator to the effect that Leroy did not misrepresent himself and complied

with the requirements of cashing a check at the credit union, including allowing himself to be fingerprinted.

Judy Smith testified that she wrote two checks, one for her dentist and the other for a donation to a children's orphanage, and she placed them in her mailbox. The check intended for the orphanage had the same check number as the one that Leroy presented at the credit union. Smith testified that she had never had any contact with Leroy, he never had done any roofing or construction work for her, and she never wrote him a check. On cross-examination, she admitted that she did not know who took the check out of her mailbox or who wrote Leroy's name on it. She did know that she put the checks in her mailbox in the morning on the same day Leroy presented them at the credit union, and they were not intended for roofing work.

The jury convicted Leroy of forgery. At sentencing, the court found the allegations of two enhancements to be true and assessed punishment at five years in prison. Leroy appealed.

**Analysis**

In his sole issue on appeal, Leroy argues that the State presented legally insufficient evidence to support his conviction because it failed to prove beyond a reasonable doubt that he had the intent to defraud or harm another.

In reviewing the legal sufficiency of the evidence to support a criminal conviction, a court of appeals will determine whether, after viewing the evidence in the light most favorable to the verdict, the trier of fact was rationally justified in finding the essential elements of the crime beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We measure the evidence "by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). As the exclusive judge of the facts, the jury may believe or disbelieve all or any part of a witness's testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We presume that the fact finder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Brooks*, 323 S.W.3d at 899–900. On appeal we may not reevaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

A person commits the offense of forgery if he "forges a writing with intent to defraud or harm another." TEX. PENAL CODE § 32.21(b); *Johnson v. State*, 425 S.W.3d 516, 520 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). The indictment in this case alleged that Leroy "unlawfully, and with intent to defraud and harm," forged a check, "which purported to be the act of another who did not authorize that act, by possessing it with intent to utter it and while knowing it was forged."

The only issue on appeal is whether the evidence showed that Leroy acted with intent to defraud or harm another. To prove the requisite intent, the trier of fact must be able reasonably to infer beyond a reasonable doubt that Leroy knew the check was forged. *See Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015). In reviewing the evidence to determine whether the jury reasonably could have made this inference, the court looks to the totality of the circumstances and weighs all of the facts. *See Johnson*, 425 S.W.3d at 524.

Intent to defraud or harm may be established by circumstantial evidence. *Williams v. State*, 688 S.W.2d 486, 488 (Tex. Crim. App. 1985); *Johnson*, 425 S.W.3d at 520. There is no bright-line rule establishing what the State must present to show intent to defraud or harm another. *See Johnson*, 425 S.W.3d at 520–24; *Griffin v. State*, 908 S.W.2d 624, 627–28 (Tex. App.—Beaumont 1995, no pet.). The mere possession, passage, or presentment of a forged instrument does not support an inference of intent to defraud. *Parks v. State*, 746 S.W.2d 738, 740 (Tex. Crim. App. 1987). Courts have looked to numerous factors to determine whether the State produced sufficient evidence to show that a defendant had the requisite intent. *See Johnson*, 908 S.W.2d at 520–24; *Griffin*, 908 S.W.2d at 627–28.

Leroy argues that this case is similar to the cases of *Pfleging v. State*, 572 S.W.2d 517 (Tex. Crim. App. [Panel Op.] 1978), *Stuebgen v. State*, 547 S.W.2d 29

(Tex. Crim. App. 1977), and *Johnson v. State*, 425 S.W.3d 516 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd), in which the evidence presented was found to be insufficient to support a finding of intent to defraud or harm another.

In comparing this case to *Pfleging* and *Stuebgen*, Leroy identifies the facts that he was listed as the payee on the check and that he did not falsely represent himself when he presented the check. He also notes that the State introduced no evidence to show that anything appearing on the checks was in his handwriting or that he ever made a statement from which it could be inferred that he knew the check was forged. The Court of Criminal Appeals relied upon these same factors in finding that the State had produced legally insufficient evidence to support an inference that each appellant knew the instrument was forged. *See Stuebgen*, 547 S.W.2d at 32; *Pfleging*, 572 S.W.2d at 519–20.

With respect to *Johnson*, the court found that the only circumstantial evidence the State produced to show the appellant's knowledge that a money order was forged was an "unaltered payment amount" on the instrument and a "short thirty-six hour timeframe between theft and presentment." *Johnson*, 425 S.W.3d at 524. The court held that this evidence was insufficient to enable the jury to infer the appellant's intent. *Id*. The State in *Johnson* also attempted to prove the appellant's intent by introducing evidence showing that he had no relationship with the purchaser of the forged money order. *Id*. at 522. The court found that this

evidence did not lead to an inference that he knew the money order was forged because the actual purchaser of the money order, the complainant, was not the person listed on the instrument at the time the appellant presented it. *Id*. The court reasoned that the State had to show that the appellant had no relationship with the person actually listed on the instrument to create an inference that he knew the money order was forged. *Id*.

This appeal is distinguishable from the cases relied upon by Leroy. The State may produce evidence of numerous different factors to prove that a defendant had the requisite intent to defraud or harm another. *See id.*; *Griffin*, 908 S.W.2d at 627–28. Unlike *Pfleging*, *Stuebgen*, and *Johnson*, in this case the State produced evidence of additional suspicious circumstances that were not present in those cases. This evidence includes the facts that: there was a short amount of time between the theft and presentment of the check; by presenting his identification and bank card without prompting Leroy acted unusually for a person who was not a member of the credit union; and he had no relationship with Smith (the actual maker of the check). The State also demonstrated that Leroy became "irate" while waiting for the teller to return with his documents, and he left the credit union without his identification, his bank card, or the check. From this evidence, the jury could have concluded that Leroy fled the scene. *See Hart v. State*, 682 S.W.2d 346,

347 (Tex. App.—Dallas 1984, pet. ref'd) (holding that defendant's leaving check-cashing center without cash or check was attempt to flee).

A defendant's attempt to flee is a "suspicious circumstance" from which the jury can infer that the defendant knew a check was forged. *See Baker v. State*, 552 S.W.2d 818 (Tex. Crim. App. 1977); *Taylor v. State*, No. 01-03-00173-CR, 2004 WL 550180 at *2 (Tex. App.—Houston [1st Dist.] Mar. 18, 2004, pet. ref'd) (mem. op., not designated for publication). In addition, an appellant's lack of any relationship with the payor, even though he was the payee on the check, taken in connection with his unexplained, personal, recent possession, and passing as his of one of the payor's stolen checks, is sufficient evidence to establish that the appellant knew the check was forged, and therefore his intent to defraud or harm another. *See Johnson*, 425 S.W.3d at 522; *see also Huntley v. State*, 4 S.W.3d 813, 815 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). And finally, a "short time frame between theft of a financial instrument and passage of the forged document has contributed to the totality of the circumstances in cases inferring an intent to defraud." *Johnson*, 425 S.W.3d at 523.

Viewing the evidence in the light most favorable to the verdict, we conclude that based on the totality of the circumstances a rational jury reasonably could have inferred beyond a reasonable doubt that Leroy knew the check was forged. *See*

*Brooks*, 323 S.W.3d at 899; *Johnson*, 425 S.W.3d at 524. Therefore, the evidence was legally sufficient to support the conviction.

We overrule his sole issue.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Massengale, Brown, and Huddle.

Publish.   TEX R. APP. P. 47.2(b).