**Affirmed and Memorandum Opinion filed February 6, 2020.**



**In The**

# Fourteenth Court of Appeals

---

## NO. 14-18-00391-CR

---

**SHUNTA BAILEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 21st District Court**
**Washington County, Texas**
**Trial Court Cause No. 17839**

---

## MEMORANDUM OPINION

Appellant Shunta Bailey appeals her convictions for forgery under Texas Penal Code section 32.31(b). She complains that the evidence presented at trial is legally insufficient to support each conviction. We affirm.

### I. PROCEDURAL AND FACTUAL BACKGROUND

Appellant was charged by indictment with two counts of forgery, each alleging that she had passed a forged check. Appellant pleaded "not guilty" to

each count and waived her right to a jury trial.

At the bench trial the court heard testimony from (1) the complainant, Judy Dallmeyer, the employee at "Center Drive In" who operated the store's check-cashing business, (2) Ashley Burns, a patrol officer with the Brenham Police Department who responded to Dallmeyer's call during the second alleged offense, and (3) a representative of the entity named as the payor on each of the checks.

Dallmeyer testified that on August 22, 2016, a woman who identified herself as "Felicia Watson" came into the Center Drive In to cash a check. At trial, Dallmeyer identified appellant as that woman. At the time appellant presented the check, Dallmeyer took the check and asked appellant if she had a driver's license, and appellant produced one. The check, offered into evidence, names "Personnel Services of Brenham" as the payor. Dallmeyer testified that she believed the check was proper and so wrote appellant's driver's license number and date of birth on the front of the check. Dallmeyer then gave appellant cash for the check, and appellant left the store with the cash.

According to Dallmeyer, the next day, August 23, she received a phone call from a person claiming to be Felicia Watson, who wanted to know if she had left her driver's license at the store. Dallmeyer called the police and reported that a woman had forged a check the day before and that she expected the woman to return to the store. Dallmeyer testified that shortly after the call, appellant — the woman who had cashed the check the day before — entered the store and told Dallmeyer she had found her driver's license and had a second check to cash. Dallmeyer testified that she took the check from appellant, picked up the phone, went back to the office, and called the police again. While making the call, Dallmeyer looked at the store's camera monitor and saw appellant walking out of the store. At the same time, Officer Burns was walking into the store. Dallmeyer

2

said, "That's her, Officer Burns."

Officer Burns testified that as she was entering the store, Dallmeyer pointed out to her that appellant was trying to leave the premises. Officer Burns explained that she then pursued appellant and told appellant many times not to get into appellant's vehicle, but that appellant continued to walk, got into the vehicle, and put her hand on the gear shift, though she did not drive away. After appellant identified herself by two different names, the passenger in the vehicle ultimately told Officer Burns that appellant's name was Shunta Bailey. Officer Burns testified that appellant admitted to passing a fraudulent check. The trial court admitted into evidence the video from Burns' body camera, which had recorded the officer's exchange with appellant.

On behalf of Personnel Services, Donna Gandy testified that the check that appellant cashed on the first day was not a check from Personnel Services of Brenham and that Personnel Services of Brenham did not give permission to anyone to create that check. Joseph Hardy, a representative of Germani Insurance, testified that Germania Insurance did not issue the check appellant tried to cash on the second day and that no one from Germania Insurance had permission to create that check on behalf of Germania Insurance.

The trial court found appellant guilty as charged on each count. Appellant pleaded "true" to the enhancement paragraphs for each charged offense. The trial court assessed punishment at twenty years' confinement for each conviction, and specified that the sentences were to run consecutively.

## II. ISSUES AND ANALYSIS

In evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the

verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). We may not overturn the verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact stands as "the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). So, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person commits the offense of forgery if she "forges a writing with intent to defraud or harm another." Tex. Pen. Code Ann. § 32.21(b); *Johnson v. State*, 425 S.W.3d 516, 520 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). "Forge" means to "alter, make, complete, execute or authenticate any writing so that it purports . . . to be the act of another who did not authorize that act." Tex. Pen. Code Ann. § 32.21(a)(1)(A). "Forge" also independently means "to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged" within the meaning of the previous sentence. *Id.* § 32.21(a)(1)(B). *See State v. Allen,* 346 S.W.3d 713, 718–19 (Tex. App.—Austin 2011, pet. ref'd) (discussing meaning of "pass" in forgery statute).

The first count alleges that appellant on August 22, 2016, "with intent to

defraud or harm another, pass[ed] to Judy Dallmeyer or Center Drive Inn [sic] a forged writing, knowing such writing to be forged, and such writing had been so made that it purported to be the act of Brenham Personnel Services, who did not authorize the act, and said writing was a check of the tenor following: Check Number 301022 paid to the order of Felicia Watson in the amount of $515.36. . .[.]" The second count alleges that appellant, on August 23, 2016, "with intent to defraud or harm another, pass[ed] to Judy Dallmeyer or Center Drive Inn [sic] a forged writing, knowing such writing to be forged and such writing had been so made that it purported to be the act of Germania Insurance who did not authorize the act, and said writing was a check of the tenor following: Check Number 3532 paid to the order of Felicia Watson in the amount of $875.21. . .[.]"

To prove that appellant committed these forgery offenses, the State had to show that appellant (1) with intent to defraud or harm another (2) passed (3) a writing (4) that purported to be the act of another and (5) that other persons did not authorize the act. *See Williams v. State,* 688 S. W.2d 486, 488 (Tex. Crim. App. 1985); *Leroy v. State*, 512 S.W.3d 540, 543 (Tex. App.—Houston [1st Dist.] 2016, no pet.). In her appellate brief, appellant asserts that the State proved beyond a reasonable doubt that the two checks were fraudulent checks. Appellant challenges the sufficiency of the evidence only as to the intent-to-defraud-or-harm element.

Though the requisite culpable mental state for the offense of forgery of a writing is "intent to defraud or harm," to prove the requisite intent, the evidence must enable the trier of fact "to reasonably infer that [a]ppellant knew the instrument was forged beyond a reasonable doubt." *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *see Okonkwo v. State*, 398 S.W.3d 689, 695 (Tex. Crim. App. 2013). Intent to defraud or harm may be established by circumstantial evidence. *Williams*, 688 S.W.2d at 488; *Johnson*, 425 S.W.3d at

5

520. Proof that an actor has knowledge that a particular check is forged supports an inference of intent to defraud. *Williams*, 688 S.W.2d at 488. The law makes no bright-line rule establishing what the State must present to show intent to defraud or harm another. *See Johnson*, 425 S.W.3d at 520–24; *Griffin v. State*, 908 S.W.2d 624, 627–28 (Tex. App.—Beaumont 1995, no pet.). The mere possession, passage, or presentment of a forged instrument does not support an inference of intent to defraud. *Parks v. State*, 746 S.W.2d 738, 740 (Tex. Crim. App. 1987). Courts have looked to other circumstances to determine whether the State produced sufficient evidence to show that a defendant had the requisite intent. *See Johnson*, 425 S.W.3d at 520–24; *Griffin*, 908 S.W.2d at 627–28.

The record contains ample circumstantial proof supporting the challenged intent element for both forgery offenses. *See Griffin v. State*, 908 S.W.2d 624, 627 (Tex. App.—Beaumont 1995, no pet.) (listing cases finding suspicious circumstances sufficient to support a finding of intent). First, appellant falsely held herself out to be "Felicia Watson" and presented a driver's license of "Felicia Watson" when she presented both checks to Dallmeyer to cash. *See Wilson v. State*, 605 S.W.2d 284, 286 (Tex. Crim. App. 1980)(finding defendant's self-misidentification in the course of presenting the check constituted circumstances showing fraudulent intent). Also, appellant attempted to flee the scene, leaving behind her identification for "Felicia Watson" and the second check. *Anderson v. State,* 621 S.W.2d 805, 808 (Tex. Crim. App. 1981)(concluding that defendant's flight from the scene coupled with other evidence constituted circumstances showing that he had knowledge that the checks were forged); *Hart v. State,* 682 S.W.2d 346, 347 (Tex. App.—Dallas 1984, pet ref'd)(holding that evidence of defendant's knowledge of forgery may be inferred from his attempt to flee; concluding that such flight was sufficient to support finding on element of intent);

*Leroy v. State*, 512 S.W.3d 540, 543 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Additionally, appellant failed to identify herself to the questioning officer, giving false names instead of her real name. *See State v. Cruz*, 461 S.W.3d 531, 539 (Tex. Crim. App. 2015) (noting that providing a false name to police is evidence of a consciousness of guilt). Finally, Officer Burns testified that appellant admitted to passing a forged check, and the audio from the body-camera video showed appellant's agreement to the officer's statement that appellant should not pass forged checks with her sixteen year-old daughter. *See Cline v. State*, 685 S.W.2d 760, 762 (Tex. App.—Houston [1st Dist.] 1985, no pet.)(finding evidence "clearly sufficient" where named payor/employer testified that he confronted defendant and defendant admitted to forging signature and cashing check). Contrary to appellant's argument on appeal, the proof showed more than that appellant merely presented two checks to be cashed, separated by consecutive days.

Appellant also contends that the record is silent regarding how appellant acquired the checks, who created them, or what appellant knew or did not know about their authenticity. Appellant suggests that it would have been reasonable for the trial court to have concluded that appellant herself had been victimized, perhaps by an unscrupulous employer. The record is not entirely silent on the source of the checks. In the officer's body-camera video, admitted into evidence, appellant tells the officer that she accepted the second check from "a lady. . .named Josephine" who told appellant to cash the check. In the same recording appellant denied cashing the first check. But appellant also claimed the "Felicia Watson" driver's license was hers. Dallmeyer identified appellant as the same woman on both days who held herself out to be Felicia Watson. The State offered evidence that the individual "Felicia Watson" identified on the driver's license was

7

incarcerated at the time of the offenses. Dallmeyer also testified that appellant endorsed the first check before handing it to her. The record contains no facts to support appellant's "unscrupulous employer" suggestion, and no evidence as to any employment relationship between appellant and either of the named payors or anyone else.

As to each offense and under the applicable standard of review, we conclude the evidence is legally sufficient as to each element of the offense, including that appellant acted with an intent to defraud or harm another. *See id.*; *Wilson v. State*, 605 S.W.2d at 286; *Leroy v. State*, 512 S.W.3d at 544; *Anderson v. State,* 621 S.W.2d at 808.

We overrule appellant's two issues and affirm both of the trial court's judgments.


/s/    Kem Thompson Frost
Chief Justice


The Panel consists of Chief Justice Frost and Justices Wise and Hassan.

Do not publish — TEX. R. APP. P. 47.2(b).