# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00236-CR

**James Lee Jobson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2018-509, THE HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant James Lee Jobson was convicted by a jury of the offense of forgery, and the trial court assessed punishment at two hundred days' confinement. *See* Tex. Penal Code § 32.21(d). On appeal, Jobson asserts that the evidence is legally insufficient to support his conviction. For the reasons that follow, we will affirm the trial court's judgment of conviction.

## STANDARD OF REVIEW

Evidence is sufficient to support a criminal conviction if a rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted. *See id.* "Beyond a reasonable doubt, however, does not require the State to disprove every conceivable alternative

to a defendant's guilt." *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 20212).  In addition, the State is not required to present evidence that directly proves the defendant's guilt.  *Nisbett v. State*, 552 S.W.3d 244, 261 (Tex. Crim. App. 2018).  Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.  *Ramsey*, 473 S.W.3d at 809.

The jurors are the sole judge of the credibility of the witnesses and the weight to be given to the testimony presented at trial.  *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018).  Consequently, we defer to the jury's resolution of conflicts in the evidence, weighing of the testimony, and drawing of reasonable inferences from basic facts to ultimate facts.  *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018).

## BACKGROUND

Jobson was charged by indictment with one count of forgery and pleaded "not guilty" to the offense.[1]  In relevant part, the indictment alleged that Jobson,

> with intent to defraud or harm another, did then and there issue, transfer, pass, publish, or otherwise utter to Wells Fargo a writing that had been forged, and said writing was a check of the tenor following:
>
> [image of check 2375, made payable to "James Jobson"]

At the jury trial that followed, the State's witnesses included the complainants, Rachel Salazar and her husband, Vincente Salazar.  The Salazars are co-owners of a construction

---

[1]  Jobson was also charged with the offense of fraudulent possession of identifying information, but the jury found him "not guilty" of that offense.  *See* Tex. Penal Code § 32.51(b).

company called StoneCrafters Homes and Improvements in Comal County. At trial, Rachel Salazar testified that she primarily handles the finances for StoneCrafters and that on January 9, 2016, she was reviewing the company's checking account with Wells Fargo Bank when she discovered three cashed checks that she had not signed and that Vincente Salazar confirmed he had not signed. Rachel Salazar then reviewed the company's checkbook and discovered that there were six checks missing in total, including check number 2375. Check 2375, which was admitted into evidence at trial, was in the amount $2,480, made payable to and endorsed by "James Jobson," and purported to be signed by "Vincente Salazar." In addition, the memo line on the check indicated that it was for a "10' by 16' marble slab." Both Rachel Salazar and Vincente Salazar testified that they did not know and had never employed Jobson and that they had not authorized him to be in possession of the check. The Salazars reported the incident to the Comal County Sheriff's Office and to the Wells Fargo Fraud Department.

The State also presented testimony from Robert Fernandez, a fraud investigator for Wells Fargo Bank, and from Richard Smith, an investigator with the Comal County Sheriff's Office. Fernandez testified that when a check is cashed by a noncustomer at Wells Fargo, the bank teller will require two forms of identification from the person cashing the check, and a photograph or video of the transaction is automatically generated. In connection with the cashing of check 2375, Fernandez collected a copy of the teller's electronic transaction report— which included the presenter's driver's license number and credit card number—and a copy of the automatically generated photograph from the Wells Fargo branch in New Braunfels where the check was cashed. These documents, which were later admitted into evidence at trial, were given to the Comal County Sheriff's Office.

3

During his testimony, investigator Smith explained to the jury that from the driver's license information provided by Wells Fargo, the Comal County Sheriff's Office obtained an official driver's license record from the Texas Department of Public Safety, which included a photograph of the individual licensed. According to Smith's testimony, he "compared the photograph provided . . . by Wells Fargo to the person in that Texas driver's license and discovered they were one and the same person, Mr. Jobson." After Smith was unable to locate Jobson, he referred the matter to the criminal district attorney's office.

After the State rested, Jobson testified in his own defense and admitted to being the person that cashed check 2375. Jobson explained to the jury that he was in San Antonio when he was approached outside a store by a woman who told him that her name was "Rachel Salazar," that she needed to cash a "semi-annual child support" check but had lost her identification, and that she would give Jobson $100 if he would help her. After Jobson agreed to help the woman, he got into her vehicle and drove with her to a Wells Fargo Bank in New Braunfels. According to Jobson, the woman told him that she wanted to cash the check at that branch location, which is located inside a WalMart store, because that was the branch "that she dealt with, and she was more comfortable dealing with the [New Braunfels WalMart] branch." Once inside the Walmart, the woman filled out check 2375, making it payable to Jobson. After Jobson cashed the check, he gave the money to the woman, and she gave him $100.

The defense did not present any other witnesses or documentary evidence. At the conclusion of the trial, the jury found Jobson "guilty," and this appeal followed.

## ANALYSIS

A person commits an offense if he forges a writing with intent to defraud or harm another. Tex. Penal Code § 32.21(b). "Forge" means to "alter, make, complete, execute or authenticate any writing so that it purports . . . to be act of another who did not authorize that act." *Id.* § 32.21(a)(1)(A). "Forge" also independently means "to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged" within the meaning of subsection 32.21(a)(1)(A). *Id.* § 32.21(a)(1)(B).

To prove the offense of forgery by passing, as alleged by the indictment in this case, the State was required to show that Jobson (1) with intent to defraud or harm another (2) passed (3) a writing (4) that purported to be the act of another and (5) that other person did not authorize the act. *See Williams v. State*, 688 S.W.2d 486, 488 (Tex. Crim. App. 1985). The undisputed evidence presented at trial, including the driver's license information provided to the teller and the automatically generated photograph of the transaction, establish that Jobson passed a check that he was not authorized to pass. On appeal, Jobson does not dispute that the evidence shows that he passed a fraudulent check. Instead, Jobson's sole argument on appeal is that the evidence is insufficient to show that he acted with the requisite "intent to defraud or harm."

"When intent to defraud is the *mens rea* of the offense, the State must prove facts from which that intent is deducible beyond a reasonable doubt and, in the absence of that proof, a conviction will not be justified." *Okonkwo v. State*, 398 S.W.3d 689, 695 (Tex. Crim. App. 2013). For purposes of proving intent to defraud or harm in a check-forgery case, the State must present evidence from which the trier of fact may reasonably infer that the defendant knew the check was forged beyond a reasonable doubt. *Ramsey*, 473 S.W.3d at 809; *Okonkwo*, 398 S.W.3d at 695. There is no "bright-line rule" establishing what the State must present to show intent to

defraud or harm another, and the intent to defraud or harm may be established by circumstantial evidence. *Leroy v. State*, 512 S.W.3d 540, 543 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Williams*, 688 S.W.2d at 488-90). However, intent to defraud or harm cannot be inferred from the mere possession, presentment, or passing of a forged instrument. *De La Paz v. State*, 279 S.W.3d 336, 350 n.46 (Tex. Crim. App. 2009); *Leroy*, 512 S.W.3d at 543; *see Gonzales v. State*, No. 03-18-00687-CR, 2020 Tex. App. LEXIS 3221, at *11 (Tex. App.—Austin Apr. 17, 2020, no pet.) (mem. op., not designated for publication).

In support of his position on appeal, Jobson points out that Rachel Salazar testified that a former female employee had access to checks for StoneCrafters and that aside from Jobson's testimony about cashing the check as a favor for a woman representing herself as "Rachel Salazar," there is no other reasonable explanation in the record as to how he came into possession of the check. In addition, Jobson asserts that there are no "other suspicious facts in the record" suggesting fraudulent intent. Jobson argues that, at best, the direct and circumstantial evidence demonstrates only that he "knowingly possessed check 2375 and passed it," not that he did so with the intent to defraud or harm another. Based on the evidence before us, we disagree.

At trial, the jurors heard details about Jobson's claimed encounter with the woman from which they could have reasonably inferred that Jobson might have been alerted to the fact that the check was forged. During his testimony, Jobson explained that the woman asked him to "help her cash her semi-annual child support check, because she didn't have an ID." On cross-examination, Jobson was questioned about why a child-support check would be blank check from a company checking account and include a memo line that states "10' by 16' marble slab" and about whether he thought the check was illegal. Jobson responded that although he initially "was a little bit concerned" and "thought there might have been something fishy about

it," he decided to help the woman because she had told him the check was from her ex-husband and because she had agreed to go into the bank with him, which he assumed she would not do if she were committing fraud. According to Jobson, he decided that "if anything, she would be the one to get in trouble, not me."

The attorney for the State then questioned Jobson about a 2015 conviction for forgery. The following exchange took place:

STATE:	And your testimony just a second ago is that you were convicted by a jury back in 2015, correct?

DEFENDANT:	Correct.

STATE:	That was forgery of a financial instrument of an elderly [person], wasn't it?

DEFENDANT:	Yes, basically. Basically, the same principle.

STATE:	Almost identical, right? You show up at a bank with a check that doesn't belong to you, with your name on it, and try to cash it, right?

DEFENDANT:	Correct.

. . .

STATE:	And so for an . . . almost identical act, a jury found you guilty of cashing a check, where you were trying to help somebody out and make a little cash, right?

DEFENDANT:	Correct.

. . .

STATE:	So let me ask this: If a jury finds you guilty and a judgment is entered July 25, 2015, and here we are January 9, 2016, roughly six or seven months later, you don't know it's the wrong thing to do to take a check that doesn't belong to you walk in a bank and cash it?

DEFENDANT:	The only—the more I chose to even attempt—

7

. . .

STATE:          You knew better, because you had been convicted of walking into a bank and cashing a check that did not belong to you, right?

DEFENDANT:      Correct.

STATE:          And so, despite being convicted of doing the same thing, you saw an opportunity, you took a check that we all know did not belong to you, that you did not have permission to have, and you walked into that bank with your identifying information, you cashed that check, and you walked right out of there with cash in your pocket, correct?

DEFENDANT:      Correct.

"An extraneous offense is admissible to prove the culpable mental state required for the charged offense if the required intent cannot be inferred from the act itself, or if the accused presents evidence to rebut that inference." *Brown v. State*, 96 S.W.3d 508, 512 (Tex. App.—Austin 2002, no pet.). The relevance of an extraneous offense to show intent derives from the "doctrine of chances"—the recognition that highly unusual events are unlikely to repeat themselves inadvertently or by happenstance. *Carrizales v. State*, 414 S.W.3d 737, 745 (Tex. Crim. App. 2013). "In other words, evidence that appellant had on other occasions committed similar offenses to the one he is charged with serves to reduce the possibility that the act in question was done with innocent intent." *Sifuentes v. State*, 494 S.W.3d 806, 816 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Plante v. State*, 692 S.W.2d 487, 492 (Tex. Crim. App. 1985) (recognizing doctrine of chances)); *see Brown*, 96 S.W.3d at 512 (explaining that under doctrine of chances, "[a]n unusual or abnormal element might be present in one instance, but the more often it occurs the less likely it is to be the true explanation"). Although for the doctrine to apply there must be a similarity between the charged and extraneous offenses, the

8

degree of similarity required is not as great when intent is the material issue as when identity is the material issue. *Brown*, 96 S.W.3d at 512 (citing *Plante*, 692 S.W.2d at 492).

Here, the evidence shows that Jobson's 2015 conviction for forgery occurred less than seven months before the instant offense was allegedly committed and arose under similar circumstances, with Jobson claiming that he unknowingly cashed the forged check to "help" someone in exchange for money. Under the doctrine of chances, Jobson's 2015 forgery conviction makes it less likely that he cashed check 2375 without knowing it was forged and, consequently, is evidence of his intent.

Based on the record before us, we conclude that a rational trier of fact could reasonably infer that Jobson knew check 2375 was forged beyond a reasonable doubt. The evidence is sufficient to establish the essential elements of the offense as charged, including that Jobson acted with the requisite "intent to defraud or harm." We overrule Jobson's sole issue on appeal.

## CONCLUSION

The trial court's judgment of conviction is affirmed.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed: April 1, 2021

Do Not Publish

9