**Opinion issued July 11, 2019.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00154-CR

———————————

**DAMON MICHAEL JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 178th District Court
Harris County, Texas
Trial Court Case No. 1484980

## MEMORANDUM OPINION

A jury convicted appellant Damon Michael Jones of sexual assault of a child and assessed his punishment at twenty years' incarceration. On appeal, Jones argues that: (1) the trial court erred by admitting some of the internet searches that he made on his cell phone; (2) he received ineffective assistance of counsel because his trial

lawyer failed to object to inadmissible evidence, including the testimony of the State's expert witness; and (3) the evidence is insufficient to support his conviction.

We affirm the trial court's judgment.

## Background

Sally was a 15-year-old freshman at Dekaney High School in the spring of 2015. Jones was a 37-year-old peace officer who patrolled the high school. Sally testified that she met Jones after her cell phone was stolen by another student during the spring of 2015. According to Sally, a male student took her phone off of her desk during class and he slapped her when she complained. She turned to Jones for help after her substitute teacher and school counselors were unable to help her get her phone back. According to Sally, Jones grabbed the boy who had stolen her phone, put him against the door, and told him not to hit a woman again. Sally's phone was returned a few days later.

Jones began talking to Sally when he saw her in the hallways about the school and how bad conditions were there. He also helped her get her cell phone back after it was stolen on two other occasions. Whenever she was late to her class, Jones would give her a pass. Sally began to trust Jones and she talked to him more frequently, even confiding in him about her parents' relationship problems, and telling him about her boyfriend and that she was not sexually active.

Sally testified that, on the last day of school, she brought cupcakes for her teachers and friends, including Jones. She invited him to her marching band concert, and he stated that he wanted to keep in touch with her. He asked to exchange phone numbers, and they did so even though she knew there were rules against that.

Jones texted Sally and asked about her concert, but he never showed up. Instead, he called her afterward, apologized, and offered to take her out for ice cream at El Kiosko. They coordinated a time when her parents were not home, and he picked her up down the street from her house. Jones paid for the ice cream with his credit card. They sat and talked for about half an hour, after which he dropped her off back at the same location.

Jones and Sally continued to talk on the phone; she would tell him about her ex-boyfriend and her parents. Sometimes Jones turned the conversation to more intimate topics, i.e., Sally was talking about going to a movie, Jones mentioned a lap dance. Jones said, "You should show me some moves," and Sally, who had a crush on Jones at the time, answered, "I will."

Sometime in June, Sally suggested that she and Jones see a movie at a theater, but Jones rejected that idea because there might be kids from the school there. She suggested Jones's house, but he said "no" because his brother might be there. They then agreed to watch a movie at a hotel, and Sally suggested the Palace Inn, a hotel close to her house.

On June 19, 2015, Jones picked up Sally down the street from her home and drove her to the Palace Inn. She waited in the car while Jones got a card for a room.

When they got inside the room, Sally asked about the movie. Jones told her that they were going to do something more fun and he told her to show him some dance moves. Jones played music on his phone and tried to kiss her. When Sally told Jones that she wanted to leave because she was not feeling well, he said, "we came this far, you know, like, for nothing." He told her to show him some dance moves, and she repeated that she really wanted to leave. But his tone of voice became more aggressive, and Sally did not want to make a scene because her parents did not know where she was. She went for the door, but he pushed her back.

Jones grabbed Sally and kissed her, and she started kissing him back. He kept insisting on a lap dance, and eventually she gave him one. After the lap dance, Jones pushed Sally down on the bed, took off her clothes, and kissed her. She testified that when she struggled against him, Jones became angry and told her, "I don't want to force it. Either you make it—make it nice for you, or you make it the bad way."

Jones then opened her legs with his hands and asked if a guy had ever come inside her. Sally said "no." He said that he did not want to use protection and that he wanted to be the first to ejaculate inside her. When Sally told Jones that she was scared because she did not want to get pregnant, he told her, "don't worry about it because I have a pill." He put on a condom, but he warned Sally that if she kept

4

complaining about getting pregnant, "he was going to take it off, and he was just going to do it like that."

According to Sally, Jones penetrated her vagina with his penis and kept "talking dirty" to her and calling her "baby girl." After a few minutes, he told Sally to lie face down so that he could penetrate her anus. She kept telling him "no" because it was going to hurt. Jones told Sally, "you have to relax more, maybe you're too tense, and you have to relax." It was very painful. He warned her that he would take the condom off if she continued to complain. Although he removed the condom, he put it back on before he put his penis back inside Sally's vagina for the second time.

When it was over, Jones took a shower and told Sally to shower with him. Jones also gave her a square pill and said, "just in case, take this pill. You're going to be fine either way because I didn't come inside you. But take this pill; you're going to be fine."

Jones told Sally that he wanted to see her again, that he was her mentor, and that he "better have something back." He also told her, "I know you're not going to tell anyone. Like, even if you do, you know nobody would believe it." Sally testified that Jones drove her back to her street around 2 p.m.; Sally knew it was around this time because she was supposed to be babysitting her younger siblings and her parents would be home from work around 2 p.m.

Sally felt rectal pain after the assault, and she had frequent nightmares, trouble sleeping, and flashbacks. She testified that she told her boyfriend Rafael about the assault shortly after it happened, and she asked him to get a pregnancy test. She told him not to tell anyone.

Sally testified that she told her boyfriend that Jones had raped her in his car. Although she could not remember the exact date, she knew she told him before she took a family vacation to Mexico. Sally testified that she did not tell her boyfriend everything about the assault and she admitted that she lied to him about where the assault occurred because she was ashamed.

Sally testified that she continued to contact Jones after the assault, even though she did not want anything to do with him, because he told her that he wanted to see her again and she did not want to make him suspicious. She explained that she used her trip to Mexico to cut ties with Jones and she did not contact him after the trip. Sally's stepfather testified that he took the family for a 10-day trip to Mexico the week of July 17, 2015. The evidence shows that Sally did not contact Jones after July 13, 2015.

On September 9, 2015, Sally told her parents that Jones had sexually assaulted her in his home, and her parents called the police. Sally began "receiving calls from friends, text messages threatening her life from that police officer." She voluntarily

6

moved to Mexico and lived with her grandmother for a year and a half after the assault before returning to Houston to finish high school.

Matthew Ferguson and Garrett Hardin, both with the Harris County Sheriff's Office, were assigned to the case. Hardin spoke with Sally's father and scheduled a forensic interview for Sally. Hardin also checked with the Palace Inn hotel and confirmed that Jones paid in cash for two hours on June 19, 2015.

Sally was taken to the Children's Assessment Center (CAC) for a physical examination. She told the doctor that she was raped by Jones, an officer who worked at her school. The doctor testified that although Sally's physical examination revealed normal results, this did not eliminate the possibility of a sexual assault given the lapse in time between the assault and the exam and elasticity of the tissues.

Sally was also interviewed by Erica Gomez at CAC. According to Gomez, Sally blamed herself for what had happened, and contemplated suicide. Sally admitted to Gomez that she had lied to her parents and to the police about where the assault occurred because she did not want her parents to know that she had gone to a hotel with Jones. Sally also told Gomez that she received text messages threatening her life from "that police officer" after she reported the assault. Gomez testified that Sally told her that her boyfriend bought her the pregnancy test one or two weeks before she went to Mexico for vacation.

7

The cell phones used by Sally and Jones were obtained by police. Hardin coordinated the forensic investigation of both cell phones. Jeremy Thomas with the Sheriff Office's Child Abuse Division recovered 6,021 pages of data from Jones's phone, and 2,840 pages from Sally's phone. The State offered some of the extracted data into evidence. Deputy Thomas testified that the data collected from Jones's cell phone included, among other things, records of phone calls between Sally and Jones, images of Sally that had been downloaded from Instagram, and internet searches for Sally's Instagram screen name and "Dekaney exposed." The extracted data also included searches for Plan B birth control pills, lap dance songs, and the Palace Inn hotel. Jones had a saved contact on his phone for Sally.

According to Thomas, Jones searched for Sally's Instagram account on June 13, 2015, six days before the alleged assault. Jones also searched for the term "Dekaney exposed" on June 13, 2015. When asked about searches for "Dekaney exposed," Thomas testified that sometimes "whenever a person receives a large amount of nude images of a girl or a boy, they a lot of time will unfortunately create a Instagram page, and they'll call it Dekaney exposed, or Spring exposed, or whatever school it affects." He also testified that Jones began searching for the Plan B pill on June 17, 2015, which indicated to Thomas that Jones was planning for a sexual encounter and trying to purchase the contraceptive beforehand. Thomas testified that Jones also searched for the term "lap dance 2015" on June 19, 2015.

The search occurred roughly around the time of the alleged assault. There were also text messages and phone calls between Jones and Vanessa, another female student at Dekaney High School.

When Ferguson interviewed Jones, Jones initially tried to minimize his knowledge of Sally, and he referred to her as "a little band girl who played percussion." He also claimed that Sally was promiscuous and that she was known to go to local hotels on breaks during school. Jones admitted that he rented a hotel room at the Palace Inn on June 19, 2015 to have sex with an old girlfriend. He also claimed that Sally had a crush on him, and she was jealous because she had seen him with the ex-girlfriend.

Dr. Lawrence Thompson testified as an expert witness with respect to characteristic behaviors of victims of child abuse. Dr. Thompson testified at trial about his qualifications. Specifically, Dr. Thompson testified that he holds a doctorate in clinical psychology and he has worked for the CAC as the director of therapy and psychological services for over seventeen years. Dr. Thompson's duties for the CAC include counseling sexually abused children, providing therapy and crisis intervention, testifying in court, and overseeing the work of twenty-five other master and doctoral level professionals, who provide therapy at the CAC. Other than listening to her testimony, Thompson had not interviewed Sally, treated her, or familiarized himself with any details about her case. He testified about general

behaviors exhibited by child abuse victims, including the ways in which they disclose the abuse. He also testified that perpetrators of child sexual abuse often engage in grooming behaviors and that Jones displayed some grooming behaviors.

## Sufficiency of the Evidence

In his third issue, Jones argues that the evidence is insufficient to support his conviction. Because our resolution of Jones's third issue would potentially afford him the most relief, we will address this issue first.

### A.      Standard of Review and Applicable Law

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Griffin v. State*, 491 S.W.3d 771, 774 (Tex. Crim. App. 2016). We must consider all of the evidence adduced at trial, whether it was admissible or inadmissible. *See Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013) (stating courts consider admissible and inadmissible evidence presented at trial when conducting sufficiency analysis).

The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). The jury, as the sole judge of credibility, may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707

10

S.W.2d 611, 614 (Tex. Crim. App. 1986); *Rivera v. State*, 507 S.W.3d 844, 853–54 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Leroy v. State*, 512 S.W.3d 540, 543 (Tex. App.—Houston [1st Dist.] 2016, no pet.). We give great deference to the jury's credibility determinations. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination."). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

A person commits sexual assault of a child if he intentionally or knowingly "causes the penetration of the anus or sexual organ of a child by any means[.]" TEX.

PENAL CODE § 22.011(a)(2)(A). For purposes of this offense, the statute defines "child" as "a person younger than 17 years of age." *Id.* § 22.011(c)(1). A person acts intentionally when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a). A person acts knowingly when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

A child complainant's testimony alone is sufficient to support a defendant's conviction for sexual assault of a child. *See* TEX. CODE CRIM. PROC. art. 38.07.

**B.  Discussion**

In this case, the indictment alleged that Jones unlawfully, intentionally, or knowingly penetrated Sally's anus and sexual organ with his sexual organ on or about June 19, 2015. Sally testified that Jones took her to the Palace Inn on June 19, 2015, and that he inserted his penis into her anus and her vagina. She also testified that she was fifteen years old at the time of the assault. Sally's testimony, standing alone, is sufficient to support Jones's conviction for sexual assault of a child. *See* TEX. CODE CRIM. PROC. art. 38.07; *see also Bartlett*, 270 S.W.3d at 150 (stating that jurors are exclusive judges of facts and weight to be given to witness's testimony).

Nevertheless, Jones argues that the evidence is insufficient to support his conviction because Sally's statements were so inconsistent that no reasonable jury could have found her testimony credible, and, without her testimony, the State could not prove its case beyond a reasonable doubt. Jones cites to *Ex parte Mayhugh*, 512

12

S.W.3d 285 (Tex. Crim. App. 2016), in support of his claim that Sally's alleged lack of credibility rendered the evidence insufficient. *Mayhugh*, however, is factually distinguishable. In that case, two young girls alleged that four women had spontaneously and violently gang-raped them on two occasions within a single week. *Id.* at 288. The court noted that the girls' statements were so inconsistent and contradictory that, "[d]iscerning a coherent picture of the alleged assaults from the different versions provided by each complainant takes considerable intellectual effort." *Id.* at 290.

More importantly, however, unlike the complainants in *Mayhugh*, Sally's testimony is corroborated by other evidence, including hotel records, the data on Jones's cell phone, and his admissions to police. Specifically, Sally's testimony that Jones took her home around 2 p.m. after he assaulted her at the Palace Inn on June 19, 2015 is corroborated by Detective Hardin's testimony and hotel records showing that Jones checked into the Palace Inn at noon on June 19, 2015 and paid in cash for two hours. Jones also admitted to police that he went to the Palace Inn in June but said it was to have sex with a former girlfriend. Sally's testimony that Jones gave her a pill afterwards to prevent her from getting pregnant is corroborated by Jones's internet searches for Plan B pills. Further, Sally's testimony that Jones had her

perform a lap dance to music on his cell phone is also supported by his internet searches for "lap dances 2015" and Kizomba music.[1]

The crux of Jones's defensive strategy was that Sally was not a credible witness and she had fabricated the allegation of sexual abuse. Defense counsel detailed discrepancies, conflicts, or omissions between Sally's testimony and her statements to her parents, her boyfriend, the police, and to the forensic investigator who interviewed her at the CAC. Jones's trial counsel highlighted these inconsistencies for the jury during his closing argument, including Sally's conflicting statements regarding where the assault occurred. He also pointed out some discrepancies regarding other details of the assault, such as whether Sally performed a lap dance for Jones, where he picked her up from on the day of the assault, and who took a shower first.

It was the jury's responsibility to evaluate Sally's credibility and determine how much weight to give her testimony. *See Sharp*, 707 S.W.2d at 614. It is not our job to second-guess the jury on this issue. *See Williams*, 235 S.W.3d at 750 (stating

---

[1] Although Jones challenges the admissibility of some of the corroborating evidence, we must consider all the evidence presented at trial when conducting a sufficiency review, regardless of its admissibility. *See Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013) (stating courts consider admissible and inadmissible evidence presented at trial when conducting sufficiency analysis); *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004) (stating courts must consider all evidence—even improperly admitted evidence—when conducting sufficiency analysis).

appellate courts cannot re-evaluate weight and credibility of evidence or substitute court's judgment for that of factfinder); *see also Gardner*, 306 S.W.3d at 285 (stating appellate courts give great deference to jury's credibility determinations). There is sufficient evidence, if believed, to support the conviction.

We overrule Jones's third issue.

**Ineffective Assistance of Counsel**

In his second issue, Jones argues that he received ineffective assistance during the guilt/innocence phase of trial. Specifically, Jones contends that his counsel was ineffective because he did not: (1) object when Dr. Thompson testified about Sally's truthfulness and Jones's guilt, (2) request a hearing to evaluate Dr. Thompson's qualifications or the relevance of his testimony, or (3) object when Dr. Thompson was allowed to be in the courtroom when Sally testified. Jones further contends that his counsel's assistance was ineffective because he did not object to the admission of other inadmissible evidence.

**A.    Standard of Review and Applicable Law**

The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington.* 466 U.S. 668, 687 (1984). Under the *Strickland* two-step analysis, a defendant must demonstrate that (1) her counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding

would have been different. *Id.* at 687–88, 694; *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). An appellant bears the burden of proving his claims by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

Appellate review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was *not* deficient." *Nava*, 415 S.W.3d at 307–08 (emphasis in original); *see Strickland*, 466 U.S. at 689. To overcome this presumption, claims of ineffective assistance of counsel must be firmly founded in the record and affirmatively demonstrate the alleged ineffectiveness. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). However, a reviewing court will rarely be able to fairly evaluate the merits of an ineffective assistance claim on direct appeal because the trial record is usually undeveloped and inadequate to reflect the motives behind trial counsel's actions. *See id.* In fact, trial counsel should have the opportunity to explain his or her actions before being found ineffective. *See Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

**B.      Discussion**

Jones argues that his counsel was ineffective because he did not object when Dr. Thompson testified that inconsistent statements are a sign that sexual abuse has occurred, and, therefore, Sally was telling the truth about the assault, and that Jones, who exhibited behaviors associated with the grooming of child sexual assault victims, was not truthful. According to Jones, this testimony is inadmissible because Dr. Thompson was essentially testifying that Sally was telling the truth about the assault. Jones argues that no reasonable trial strategy could be consistent with allowing a witness to testify that Sally was credible or that Jones was guilty. Specifically, Jones argues that the following testimony is inadmissible.

When the State asked Dr. Thompson to define "partial disclosure" and explain how that might lead to changes in a child's story, Dr. Thompson testified:

> Partial disclosure refers to the extent someone is able to disclose on abuse, we expect them to say a bit about what happened to them. And as time goes by, as they feel more comfortable talking more, sometimes even as far as a therapeutic process, we oftentimes see people able to say more
>
> . . . .
>
> Well, with regard to the disclosure process, it is that, a process. At different times -- and we're talking about a trauma here. We're talking about somebody being sexually assaulted. So we wouldn't expect that either a child or an adult that's been traumatized in that way would say the exact same thing about that trauma at all times.

Dr. Thompson also testified:

17

I can have a kid that I've been working with in therapy for six months, and that kid may be able to freely talk openly with me about the abuse they suffered. They may not be able to do the same thing with somebody else questioning them about it, or as they're trying to talk about it in front of strangers, or even when they're trying to talk about it with their parents with shame they feel bringing it up to their parents. So things like that are also at play because kids are talking about abuse. For that reason, we don't expect them or anybody to say the exact same thing every time as they're talking about it.

Expert testimony that a particular witness is truthful is inadmissible under Rule 702. *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993) (discussing TEX. R. EVID. 702). Moreover, an expert may not give an opinion that a complainant, such as a sexual assault victim, or the complainant's class is truthful. *Yount*, 872 S.W.2d at 712. Expert testimony concerning general behavioral characteristics of sexually abused children is admissible, however, because it "helps the jury understand the seemingly illogical behavior of the child who changes her story, seems confused, and does not immediately disclose a sexual assault." *Dennis v. State*, 178 S.W.3d 172, 182 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (citing *Duckett v. State*, 797 S.W.2d 906, 915–16 (Tex. Crim. App. 1990), *disapproved on other grounds by Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993)). In this case, the trial court could have reasonably concluded that Dr. Thompson's testimony was admissible because he was discussing behavioral characteristics of sexually abused children and explaining to the jury why a child's statements regarding past sexual abuse can, and often do, change over time. He did not direct

18

his testimony to the particular facts of the case but talked generally about sexual abuse victims. He did not testify that Sally's allegations had merit, Sally was a trustworthy witness, or that children as a class are truthful. The trial court's decision to admit this testimony over Jones's objection did not constitute an abuse of discretion. *See Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (stating trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree"). Accordingly, we hold that Jones has failed to show by a preponderance of the evidence that his trial counsel's performance fell below an objective standard of reasonableness when he did not object to this portion of Dr. Thompson's testimony. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004) (holding counsel's failure to object to evidence is deficient performance only if trial judge would have committed error in overruling objection).

Jones further contends that his counsel was ineffective because he did not object when Dr. Thompson opined that Jones exhibited grooming behaviors. According to Jones, Dr. Thompson's testimony is inadmissible because he is "suggesting to the jury that the class of persons to which [Jones] belongs is not truthful in cases of child sexual abuse."

Specifically, Dr. Thompson testified that, "Grooming is any behavior that a perpetrator of child sexual abuse engages in to win over the trust of a child, or the

19

trust of the people around them so that they can use that trust to manipulate the child and abuse them." When asked which behaviors Jones exhibited that would be considered grooming techniques, Dr. Thompson replied:

> The complainant feels -- seems to feel responsible and guilty for certain aspects of what she alleges happened. And certainly perpetrators of abuse can make kids feel like this abuse is their fault literally as a tool to make them less likely to tell somebody else about it.

The State also asked Dr. Thompson whether someone's position of authority as a teacher or police officer could be associated with grooming behavior. Dr. Thompson testified:

> Well, just the fact that a teacher or a police officer is in a role of authority can be something that people use that role in manipulating the child first just to win over the trust of the child, and then maybe even later manipulate them in terms of feeling like I'm a teacher, I'm a police officer, nobody is going to believe that I'm capable of doing anything like this. I've seen instances like this.

"Grooming" is a legitimate subject of expert testimony. *Morris v. State*, 361 S.W.3d 649, 650, 669 (Tex. Crim. App. 2011). "Grooming evidence is, at its most basic level, testimony describing the common behaviors of child molesters and whether a type of evidence is consistent with grooming." *Id.* at 666. The trial court could have reasonably determined Dr. Thompson was supplying relevant expert evidence when he testified that a person's position of authority is relevant when evaluating whether grooming behavior has occurred and explaining how a person's position of authority can be used to manipulate a child. Dr. Thompson did not opine

on the truthfulness or credibility of Jones, teachers, police officers, or other people who occupy positions of authority. The trial court's decision to admit this testimony over Jones's objection would not have constituted an abuse of discretion. *See Taylor*, 268 S.W.3d at 579. Accordingly, we hold that Jones has failed to show by a preponderance of the evidence that his trial counsel's performance fell below an objective standard of reasonableness when he did not object to this portion of Dr. Thompson's testimony. *See Ex parte White*, 160 S.W.3d at 53.

Jones argues that his counsel also rendered ineffective assistance because he did not request a hearing to test Dr. Thompson's qualifications and the relevance of his potential testimony under Rule of Evidence 702. *See* TEX. R. EVID. 702.

Dr. Thompson, who testified about his qualifications at trial, has also testified as an expert in the area of child sexual abuse in several cases and courts have found his testimony on similar issues to be admissible. *See, e.g.*, *Walker v. State*, 461 S.W.3d 599, 604 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (stating that Dr. Thompson testified as expert regarding behaviors characteristic of child abusers and their victims); *Adamick v. State*, No. 09-17-00108-CR, 2019 WL 942871, at *7 (Tex. App.—Beaumont Feb. 27, 2019, pet. ref'd) (mem. op., not designated for publication) (holding Dr. Thompson's testimony regarding reasons for delayed disclosure of sexual abuse is relevant in case involving allegation of continuous sexual abuse of a child); *Briones v. State*, No. 14-07-01047-CR, 2009 WL 2356626,

at *3, *6 (Tex. App.—Houston [14th Dist.] July 30, 2009, pet. ref'd) (mem. op., not designated for publication) (holding Dr. Thompson was qualified to testify regarding demonstrated behaviors of child sexual abuse victims and Thompson's testimony was relevant). Jones has not demonstrated that the result would be any different in this case if his counsel had requested a hearing. *See Cavitt v. State*, 507 S.W.3d 235, 256 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (rejecting ineffective assistance of counsel claim when defendant failed to prove that Rule 702 objection to expert's testimony would have been successful). We further note that the record is silent regarding trial counsel's decision to not challenge Thompson's qualifications or the relevance of his testimony. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). It is possible that trial counsel believed that there was no basis for challenging Dr. Thompson's testimony on these grounds, especially given the numerous rulings admitting Dr. Thompson's testimony in other cases. *See Edmond v. State*, 116 S.W.3d 110, 115 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) ("Trial counsel is not ineffective for failing to make a frivolous objection.").

Jones states that his trial counsel did not object when the court granted the State's request to allow Dr. Thompson to sit in the courtroom during Sally's testimony. A trial court, however, may allow an expert witness to remain in the courtroom during a witness's testimony if the expert plans to base his opinion on evidence offered at trial. *See Martinez v. State*, 867 S.W.2d 30, 40 (Tex. Crim. App.

1993). Notably, Jones does not contend that the trial court would have erred by overruling an objection to the State's request, had one been made. *See generally Ex parte White*, 160 S.W.3d at 53 (stating failure to object to evidence is not deficient performance unless trial court would have erred by overruling objection). We conclude that Jones did not meet his burden to prove that his counsel's performance in this regard fell below an objective standard of reasonableness. *See Goodspeed*, 187 S.W.3d at 392; *Edmond*, 116 S.W.3d at 115.

Jones also complains that his counsel rendered ineffective assistance by allowing inadmissible hearsay to come into evidence without objection, including the CAC's complete forensic interview, and testimony from Sally's boyfriend and stepfather regarding what she told them about the sexual assault. As previously discussed, the record reflects that Jones's defensive strategy was to challenge Sally's credibility. Defense counsel used the testimony of Sally and the State's other witnesses to draw out discrepancies, conflicts, or omissions in Sally's various outcry statements which counsel extensively highlighted in his argument. *See Lopez v. State*, 343 S.W.3d 137, 141, 143–44 (Tex. Crim. App. 2011) (no deficient performance on silent record as to why counsel failed to object to inadmissible hearsay; possible strategy included exposing inconsistencies in outcry statements); *see also Heiman v. State*, 923 S.W.2d 622, 626–27 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (holding failure to object to inadmissible testimony about

23

extraneous offenses could have been trial strategy demonstrating victim's lack of credibility).

We overrule Jones's second issue.

**Admission of Evidence**

In his first issue, Jones argues that the trial court abused its discretion by admitting evidence of searches on his cell phone for Sally's Instagram screen name, "Dekaney exposed," the Plan B pill, lap dances, and the Palace Inn, and communications between him and Vanessa. Specifically, Jones argues that the State did not give him notice of its intent to use this evidence in advance of trial, as required by Rule 404(b) and article 38.37, and this evidence is irrelevant or more prejudicial than probative.

## A.    Standard of Review and Applicable Law

We review a trial court's ruling to admit or exclude testimony under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (stating trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree.").

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. TEX. R. EVID. 401.

In determining relevance, courts must examine the purpose for which particular evidence is being introduced. *Layton*, 280 S.W.3d at 240. "It is critical that there is a direct or logical connection between the actual evidence and the proposition sought to be proved." *Id.* Evidence is relevant if it "corroborates another witness'[s] story or enhances inferences to be drawn from another source of evidence." *Shaw v. State*, 329 S.W.3d 645, 651 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (quoting *Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993)). Evidence may also be admissible if it is relevant to a noncharacter conformity fact of consequence in the case, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, or to rebut a defensive theory. TEX. R. EVID. 404(b)(2); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).

While relevant evidence is generally admissible, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403.

Rule 44.2(b) of the Texas Rules of Appellate Procedure provides that any non-constitutional "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). A substantial right is affected when an error has a substantial, injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If, on the record as a whole, it appears the error "did not influence the jury, or had but a slight effect," this Court must consider the error harmless and allow the conviction to stand. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

The admission of inadmissible evidence is harmless if substantially similar evidence was admitted without objection. *See Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010); *see also Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) (holding error in admission of evidence may be rendered harmless when "substantially the same evidence" is admitted elsewhere without objection).

**B. Lack of Notice**

Jones argues that the trial court erred by admitting evidence of his cell phone searches pursuant to Rule of Evidence 404 and article 38.37 of the Code of Criminal Procedure because the State failed to give notice of its intent to introduce this evidence.

Texas Rule of Evidence 404(b)(2) states that "[o]n timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before

trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief." TEX. R. EVID. 404(b)(2). Article 38.37, section 3 of the Code of Criminal Procedure also requires the State to give the defendant notice of the State's intent to introduce in the case-in-chief evidence pursuant to sections 1 or 2 of the rule prior to trial. TEX. CODE CRIM. PROC. art. 38.37, § 3.

Preservation of error is a systemic requirement on appeal. *Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016). For a party to preserve an issue for appeal, it must make a timely, specific objection to the alleged error and obtain a ruling. *See* TEX. R. APP. P. 33.1(a); *Alvarez v. State*, 491 S.W.3d 362, 367 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). The party must (1) tell the trial judge what the party wants, (2) inform the judge why the party is entitled to that relief, and (3) be clear enough so that the judge understands the party's position in time for the judge to correct the error. *See Reyna v. State*, 168 S.W.3d 173, 177–78 (Tex. Crim. App. 2005); *Alvarez*, 491 S.W.3d at 367. To meet these requirements, the party must "state[ ] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A); *Alvarez*, 491 S.W.3d at 367–68.

Texas courts have held that points of error on appeal must correspond or comport with objections and arguments made at trial. *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998); *Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd). "Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review." *Wright*, 154 S.W.3d at 241; *see Resendiz v. State*, 112 S.W.3d 541, 547 (Tex. Crim. App. 2003) (holding that issue was not preserved for appellate review because defendant's trial objection did not comport with issue he raised on appeal).

The record reflects that the State gave Jones notice that it intended to introduce evidence of some of his internet searches, including "numerous internet searches for pornography," "escort services," and other sexually explicit material, and his communications with Vanessa. We further note that Jones's counsel never objected to the admission of evidence of the searches on the basis of inadequate notice pursuant to article 38.37 or rule 404. He did not seek a continuance or otherwise complain that he was surprised by the State's use of Jones's cell phone searches nor did he complain that he was unprepared to challenge this evidence. He also did not make a specific objection that would have made the trial court aware that he received inadequate notice of the State's intent to use extraneous bad act evidence in violation of article 38.37 and rule 404. Accordingly, Jones did not preserve for appellate review his complaint that the evidence was inadmissible due to lack of notice. *See*

28

TEX. R. APP. P. 33.1(a); *Alvarez*, 491 S.W.3d at 367–68; *Belcher v. State*, 474 S.W.3d 840, 849–50 (Tex. App.—Tyler 2015, no pet.) (holding that defendant forfeited his complaint about notice of extraneous offenses required by article 38.37 because he did not raise complaint in trial court).

## C.     Admissibility of Evidence

Jones also argues that the trial court abused its discretion by admitting evidence of searches on his cell phone because the evidence is irrelevant or more prejudicial than probative. *See* TEX. R. EVID. 401, 403.

The State introduced evidence of some of the data extracted from Jones's cell phone during Deputy Thomas's testimony. During hearings outside the jury's presence, the trial court sustained Jones's objection to searches for pornographic websites and sexually explicit topics that were conducted after the date of the alleged assault and to the extraction data as a whole. The trial court, however, allowed the State to introduce some of the evidence extracted from Jones's cell phone, including evidence of the following searches conducted on, or prior to, June 19, 2015: "Any Internet searches on her screen name, the Internet Dekaney students, Internet searches two days prior to the Plan B pill. The one search on June 19th regarding the lap dance. The two searches on the 19th for the Plan B. Five Internet searches on Kroger price. And 7 regarding the Palace Inn on June 19th. And the one on the type of dance."

29

When the State offered extraction reports containing these search terms into evidence, Jones's counsel objected: "Your Honor, I would renew my objections that I made when the jury was outside the courtroom concerning my objections to this matter under 404(b)—403 and 38.37." The trial court overruled the objections and instructed the jury: "Ladies and gentlemen, the following evidence you may consider this evidence, if at all, if it aids you in proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

Even if the evidence of the internet searches conducted on Jones's cell phone regarding the Plan B pill, lap dance songs, Kizomba music, the Palace Inn, Sally's Instagram screen name, and his conversations with Vanessa were inadmissible, the admission of this evidence was harmless because substantially similar evidence was admitted without objection. *See Coble*, 330 S.W.3d at 282; *see also Mayes*, 816 S.W.2d at 88 (holding error in admission of evidence may be rendered harmless when "substantially the same evidence" is admitted elsewhere without objection). Specifically, Deputy Hardin testified that he helped create two timelines that were admitted into evidence without objection as State's Exhibits 101 and 103. Exhibit 103 reflects YouTube app or browser searches conducted on Jones's cell phone the morning of June 19, 2015 for the terms "kizomba," "lap dance songs 2015," "best time to take plan b one step," "Plan b at Kroger price," and "Palace Inn 45 north." Jones also told police that he had gone to the Palace Inn in June to have sex with a

former girlfriend, and hotel records that were introduced without objection showed that Jones checked into the Palace Inn at noon on June 19, 2015, and paid in cash for two hours. Deputy Hardin also testified that Jones paid in cash for two hours at the Palace Inn on June 19. With respect to searches for Sally's Instagram name, over a half dozen photographs of Sally that had been downloaded from her Instagram account were found on Jones's cell phone and were admitted without objection. These exhibits also contained Sally's screen name. Jones's conversations with another high school student, Vanessa, were also harmless because Vanessa testified at trial about these conversations. Accordingly, any error associated with the admission of this evidence was harmless. *See Coble*, 330 S.W.3d at 282; *see also Mayes*, 816 S.W.2d at 88.

The trial court did not abuse its discretion by admitting evidence from Jones's cell phone showing that Jones had unsuccessfully searched for the term "Dekaney exposed." Deputy Thomas testified that Jones searched for Sally's Instagram account and for the term "Dekaney exposed" on June 13, 2015. He also testified that terms like "Dekaney exposed" refer to Instagram pages containing nude images of students from the referenced high school, e.g., Dekaney High School. Jones's searches for "Dekaney exposed" are relevant because they rebut a defensive theory that he was not attracted to teenaged girls. *See Powell*, 63 S.W.3d at 438. The fact that these searches were conducted on the same day that Jones was searching for

Sally's Instagram account is also relevant because it makes it more likely that Jones had a sexual interest in Sally in particular.

Even if evidence of Jones's searches for the term "Dekaney exposed," was not admissible, any such error was harmless because, based on the record as a whole, it appears that the error "did not influence the jury, or had but a slight effect." *See* TEX. R. APP. P. 44.2(b); *Johnson*, 967 S.W.2d at 417. The weight of the evidence of the defendant's guilt and "the character of the alleged error and how it might be considered in connection with other evidence in the case" are relevant factors in conducting a harm analysis under Rule 44.2(b). *Motilla v. State*, 78 S.W.3d 352, 359–60 (Tex. Crim. App. 2002). In this case, Sally testified in detail regarding the events leading up to the assault and the assault itself, and much of her testimony was corroborated by other evidence that was admitted without objection, including other data extracted from Jones's cell phone. Furthermore, it took the jury only sixteen minutes to find Jones guilty, despite hearing seven days of testimony. The State did not refer to this evidence in closing or otherwise focus the jury's attention on Jones's searches for "Dekaney exposed." The search term itself is not inflammatory or salacious, and there is no indication that Jones located any such Instagram page. Therefore, based on the record as a whole, we conclude that any error associated with the admission of this one search term was harmless because it "did not influence

32

the jury, or had but a slight effect." TEX. R. APP. P. 44.2(b); *Johnson*, 967 S.W.2d at 417.

We overrule Jones's first issue.

## Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice


Panel consists of Justices Lloyd, Landau, and Countiss.

Do Not Publish.   TEX. R. APP. P. 47.2(b).

33